UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD ST. PAUL,

Plaintiff,

-against-

HON. NILDA MORALES-HOROWITZ, et al.,

Defendants.

25-CV-4317 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Richard St. Paul, a practicing attorney appearing pro se, brings this 24 U.S.C. § 1983 action against four individual judges, the Westchester County Family Court, and the New York State Unified Court System ("UCS"). Plaintiff brings due process, denial of right to an impartial tribunal, and retaliation claims arising from his four-day incarceration for failure to pay child support. Additionally, Plaintiff alleges against all Defendants, other than Judge Morales-Horowitz, a systemic failure to train, supervise, and discipline the Family Court judiciary. Presently before the Court is Plaintiff's Motion for Leave to Amend his First Amended Complaint. Because the requested amendments would be futile, the Court denies Plaintiff's Motion to Amend.

Plaintiff's First Amended Complaint also appears to suffer from the same issues as his Second Amended Complaint. The Court had stayed briefing on Defendants' Motion to Dismiss while it evaluated Plaintiff's Motion for Leave to Amend. However, because it appears that Plaintiff's claims in his First Amended Complaint may also be futile, he is ordered to respond by **June 5, 2026**, as to why Plaintiff's action should not be dismissed in its entirety for the same reasons stated in this Opinion and Order. Any reply by Defendants is due by **June 12, 2026**.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the proposed Second Amended Complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3D 471, 475 (2d Cir. 2009); *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) (applying the Rule 12(b)(6) standard to a motion to amend and accepting all factual allegations as true).

Pro se Plaintiff Richard St. Paul, a resident of Westchester County, New York, is a practicing attorney. ECF No. 28 ("PSAC") ¶ 8. Defendant Judge Morales-Horowitz is a judge of the Family Court for Westchester County, New York. *Id.* ¶ 9. Defendant Judge Egitto is a judge of the Family Court for Dutchess County, New York, and Supervising Judge of the New York Family Courts of the Ninth Judicial District. *Id.* ¶ 10. Plaintiff alleges Judge Egitto is "responsible for oversight of Family Court operations and administration in Westchester County." *Id.* ¶ 10.

Defendant Chief Administrative Judge Joseph A. Zayas is the Chief Administrative Judge ("CAJ") of New York State Courts. *Id.* ¶ 13. Defendant Justice Kathie E. Davidson is the Dean of the New York State Judicial Institute, the entity tasked with developing and providing judicial training programs. *Id.* ¶ 14. Defendant UCS is the entity responsible for the administration of New York's courts. *Id.* ¶ 11. Finally, Plaintiff also brings suit against Westchester County Family Court. *Id.* ¶ 12.

This case arises from an underlying Family Court Matter, Docket No. F-06654-12/24H (the "Family Court Case"), in the Westchester County Family Court. *Id.* ¶ 17. The Family Court Case arose because Plaintiff St. Paul failed to pay $30,000 of child support. *Id.* ¶ 19–20. At the outset of the Family Court Case, St. Paul raised a lack of personal jurisdiction defense, but the

2

case proceeded. *Id.* ¶ 18. Additionally, St. Paul requested that Judge Morales-Horowitz recuse herself from the Family Court Case, based on a perceived bias against St. Paul, but Judge Morales-Horowitz declined to do so. PSAC ¶¶ 23–25; ECF No. 1 ¶ 15. St. Paul separately alleges that Judge Morales-Horowitz has a documented history of judicial misconduct. PSAC ¶¶ 35–38.

On or about November 12, 2024, Judge Morales-Horowitz issued an Order of Commitment against St. Paul, "ordering his incarceration for a period of four months with a purge amount set at $30,000." *Id.* ¶ 19. On December 19, 2024, St. Paul appeared in Court, having not yet paid the purge amount, but was allegedly "ready and available" to pay the $30,000 "to secure his release and avoid incarceration." *Id.* ¶ 20. Nevertheless, Judge Morales-Horowitz or another court employee indicated that the payment could not be processed at that specific court location. *Id.* ¶ 21. St. Paul was then incarcerated.[1] *Id.* ¶ 22.

On May 21, 2025, Plaintiff brought this action against Judge Morales-Horowitz, Judge Egitto, the Westchester County Family Court, and John and Jane Does. ECF No. 1. On August 10, 2025, Plaintiff filed an Amended Complaint, which added Defendants UCS; CAJ Zayas, in his official capacity; and Justice Davidson, in her official capacity. ECF No. 9 ("FAC"). Four days later, on August 14, 2025, Defendants Judge Morales-Horowitz, Judge Egitto, and the Westchester County Family Court filed a Motion to Dismiss Plaintiff's original Complaint. ECF No. 10. However, the Court accepted Plaintiff's Amended Complaint and denied Defendants' initial Motion to Dismiss as moot. ECF No. 14. On October 3, 2025, Defendants filed a Motion to Dismiss Plaintiff's FAC. ECF No. 18.

---

[1] St. Paul has previously alleged that he was then incarcerated for four days, from December 19, 2024, until his release on December 23, 2024. ECF No. 1 ¶ 15.

3

Meanwhile, on November 3, 2025, in another Family Court proceeding, the Family Court dismissed an application by St. Paul as "duplicative." *Id.* ¶¶ 31–34. St. Paul does not describe the relief sought in this application to the Family Court. Two days later, on November 5, 2025, Plaintiff filed a letter motion for an extension of time to respond to Defendants' Motion to Dismiss. ECF No. 21. Defendants opposed Plaintiff's motion. ECF No. 22. In Plaintiff's reply, Plaintiff continued to request an extension to oppose the pending Motion to Dismiss, but also newly requested leave to again amend his complaint. ECF No. 23; *see also* ECF No. 27 (reiterating Plaintiff's request for leave to file a second amended complaint).

On December 5, 2025, the Court granted leave to file a motion to amend and stayed Plaintiff's deadline to oppose the pending Motion to Dismiss. On December 15, 2025, Plaintiff filed the present Motion for Leave to File a Second Amended Complaint. ECF No. 29. Plaintiff attached a proposed Second Amended Complaint to this motion. PSAC. On December 29, 2025, Defendants opposed Plaintiff's Motion to Amend. ECF No. 31. On January 23, 2026, Plaintiff replied. ECF No. 33.

In his PSAC, Plaintiff brings a claim of systemic failure to train, supervise, and discipline (Count I) against all Defendants other than Judge Morales-Horowitz. PSAC ¶¶ 51–54. Plaintiff brings a deprivation of liberty and due process claim (Count II), arising from his incarceration, against Judge Morales-Horowitz and Judge Egitto. *Id.* ¶¶ 55–57. Finally, Plaintiff brings a denial of right to an impartial tribunal and retaliation claim (Count III) against Judge Morales-Horowitz only. *Id.* ¶¶ 58–61. Plaintiff requests various declaratory and injunctive relief against all Defendants, and at least $1,000,000 in compensatory and punitive damages against Judge Egitto and Judge Morales-Horowitz. *Id.* at 8–9. Each of these claims, other than retaliation against

Judge Morales-Horowitz, is likewise included in Plaintiff's First Amended Complaint. *See* FAC ¶¶ 35–44.

## LEGAL STANDARD

Where, as here, the application to amend is made outside the time for Plaintiff to do so as a matter of course, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In such a scenario, "[t]he court should freely give leave when justice so requires." *Id.* On this point, the Second Circuit has instructed that "a *pro se* plaintiff 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "However, '[w]here it appears that granting leave to amend is unlikely to be productive,'" it need not be permitted. *Mallek v. Allstate Indem. Co.*, No. 17-CV-5949 (KAM), 2018 WL 3629596, at *2 (E.D.N.Y. July 31, 2018) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (alteration in original)). Accordingly, "[l]eave to amend, though liberally granted, may properly be denied for 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Tapia v. Huaquechula Rest. Corp.*, No. 18-CV-10771 (PMH), 2020 WL 3893314, at *2 (S.D.N.Y. July 10, 2020) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). Deciding such a motion falls within the discretion of the Court. *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . .").

5

**DISCUSSION**

Plaintiff's proposed amendments are futile. The Eleventh Amendment of the United States Constitution bars Plaintiff's claim against the Westchester County Family Court and the UCS, as well as Plaintiff's claims for money damages against Judge Egitto and Judge Morales-Horowitz in their official capacities. Additionally, the *O'Shea* abstention doctrine prohibits this Court from granting Plaintiff's requested injunctive and declaratory relief, or deciding Plaintiff's claim against the Westchester County Family Court, the UCS, CAJ Zayas, and Justice Davidson. Furthermore, all claims for money damages against Judge Morales-Horowitz and Judge Egitto in their individual capacities are barred by judicial immunity.

I.    **The Eleventh Amendment Bars Claims Against the Westchester County Family Court and the UCS, as well as Damages Claims Against Judges Egitto and Morales-Horowitz in Their Official Capacities**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "This immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief." *Yi Sun v. Saslovsky*, No. 19-CV-10858 (LTS), 2020 WL 6828666, at *3 (S.D.N.Y. Aug. 6, 2020). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted).

"Congress has not abrogated the States' immunity for claims under section 1983, and the State of New York has not waived its immunity to suit in federal court." *Yi Sun*, 2020 WL 6828666, at *3 (internal citations omitted). "The New York Family Courts and [the UCS] are arms of the State of New York and enjoy Eleventh Amendment immunity." *Id.* at *3 (first citing *Gollomp*, 568 F.3d at 368 (concluding that the New York state court system enjoys Eleventh Amendment immunity); and then citing *Murray v. Thompson*, No. 17-CV-7004 (VB), 2018 WL 5113955, at *4 (S.D.N.Y. Oct. 19, 2018) (finding that a New York Family Court enjoys same)); *see also DeRouseau v. Westchester Cnty. Fam. Ct.*, No. 24-CV-5976 (LTS), 2024 WL 4635310, at *2 (S.D.N.Y. Oct. 28, 2024) ("Plaintiff's Section 1983 claims against the [Westchester County] Family Court are therefore barred by the Eleventh Amendment and are dismissed for lack of jurisdiction.").

Plaintiff's claims against Defendants UCS and the Westchester County Family Court are barred by Eleventh Amendment immunity. Any of Plaintiff's claims brought against those Defendants are futile. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'"). Therefore, Plaintiff's only proposed claim in the PSAC against UCS and Westchester County Family Court—for failure to train (Count I)—fails as a matter of law against these defendants.

Additionally, "[t]he Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities." *Zeigler v. New York*, 948 F. Supp. 2d 271, 281–82 (N.D.N.Y. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985)); *see also Paulk v. Kearns*, 596 F. Supp. 3d 491, 497 (W.D.N.Y. 2022) (dismissing a suit for money damages against a justice of a New York State Supreme Court as barred by the Eleventh Amendment). Therefore,

7

the Eleventh Amendment also bars Plaintiff's requests for compensatory and punitive damages against Judge Morales-Horowitz and Judge Egitto in their official capacities. *See* PSAC at 8 (requesting compensatory and punitive damages in an amount no less than $1,000,000 against Judge Morales-Horowitz and Judge Egitto).

## II.    The *O'Shea* Abstention Doctrine Bars Consideration of Plaintiff's Failure to Train, Supervise, and Discipline Claim, as well as All Declaratory and Injunctive Relief

Under Section 1983, Plaintiff brings a failure to train, supervise, and discipline claim against all Defendants other than Judge Morales-Horowitz and requests declaratory and injunctive relief. PSAC ¶¶ 51–54. The *O'Shea* doctrine requires this Court to abstain from adjudicating this claim or granting Plaintiff's requested injunctive and declaratory relief. *See O'Shea v. Littleton*, 414 U.S. 488 (1974).

The Supreme Court has recognized "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). "[T]he Supreme Court has also held that even where no state proceedings are pending, federal courts must abstain where failure to do so would result in 'an ongoing federal audit of state criminal proceedings.'" *Disability Rts. New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (quoting *O'Shea*, 414 U.S. at 500).

Specifically, the *O'Shea* doctrine "has also been applied in certain civil contexts involving the operations of state courts." *Id.* "The application of *O'Shea* abstention primarily turns on the relief sought—i.e., the degree of intrusion into the state courts' domain—and the strength of the state interest at stake." *Bronx Defs. v. Off. of Ct. Admin.*, 475 F. Supp. 3d 278, 285 (S.D.N.Y. 2020). "The more substantial the requested invasion of the state courts' domain and

the stronger the state interest, the more likely the requested relief would violate the principles of comity set forth in" *O'Shea*. *Id.*

For example, in *Disability Rights*, the Second Circuit affirmed a district court's abstention from directing the UCS, the Chief Judge of the State of New York, and the CAJ for New York Courts, to abide by certain notification and procedural requirements, because the "requested relief would effect a continuing, impermissible 'audit'" of New York court proceedings. 916 F.3d at 136. The Second Circuit held that "[b]ecause this Court has no power to intervene in the internal procedures of the state courts and cannot legislate and engraft new procedures upon existing state practices, the district court correctly abstained from exercising jurisdiction in this case." *Id.* (cleaned up); *see also Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (quoting *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975)) (stating that "under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts").

Likewise, here, "[t]he relief requested by Plaintiff[] requires significant intrusion into state court operations and proceedings." *Bronx Defs.*, 475 F. Supp. 3d at 285. In the PSAC, Plaintiff requests "[d]eclaratory [j]udgment that [CAJ Zayas, Justice Davidson, the UCS, and the Westchester County Family Court's] policies, customs, and practices regarding the training, supervision, and discipline of Family Court judges violate the United States Constitution and specifically constitute an ongoing violation of federal law subject to the *Ex parte Young* doctrine." PSAC at 8. Plaintiff also requests "Prospective Injunctive Relief" (1) ordering CAJ Zayas, Justice Davidson, the UCS, and the Westchester County Family Court "to cease their unconstitutional policies and to develop and implement a comprehensive, constitutionally adequate training and supervision program for all Family Court judges and relevant staff who

9

interact with litigants and implement judicial orders," and (2) "prohibiting [Judge Egitto and Judge Morales-Horowitz] from presiding over any current or future case involving the Plaintiff." *Id.* at 9.

Plaintiff's requested injunctive relief would require the federal courts to oversee state courts' internal training and supervision and exert control over judicial case assignments. *See* PSAC at 8–9. This relief, if granted, would impermissibly interfere with New York state courts' self-governance. As discussed, the Second Circuit and other courts in this District have similarly abstained from instituting and overseeing state court policies, and from interfering with state courts' judicial assignments system. *See Bronx Defs.*, 475 F. Supp. 3d 278, 289 (S.D.N.Y. 2020) (abstaining from granting relief that would "mandate a new policy for the state courts, require specific provisions in that policy, and then supervise its implementations"); *Kaufman*, 466 F.3d at 86–88 (abstaining from requiring state courts to establish a new system for assigning appeals).

Even Plaintiff's requested declaratory relief would require a finding of "*ongoing* violation of federal law" by the New York state courts' policies, customs, and practices, which would likely then necessitate future federal oversight of Family Court judges. *See* PSAC at 8 (emphasis added). *O'Shea* also bars this declaratory relief. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (holding that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid"). "[A]bstention is proper where the relief sought 'would inevitably set up the precise basis for *future intervention* condemned in *O'Shea*' because 'the question of defendants' compliance with any remedy imposed could be the subject of future court challenges." *Disability Rts. New York*, 916 F.3d at 137 (quoting *Miles v. Wesley*, 801 F.3d 1060, 1063–64); *see id.*(affirming a district court's abstention "from exercising jurisdiction even as to [plaintiff's]

request for declaratory relief"). Therefore, Plaintiff's requested declaratory relief would impermissibly require future federal interference with and oversight of state courts.

Moreover, abstention is particularly appropriate here because Plaintiff could raise his concerns regarding New York state court procedures in state proceedings. "[A]bstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982)). The fact that the state court may have already dismissed Plaintiff's claims, PSAC ¶¶ 31–33, does not change this, because a court "need ask only 'whether the state's procedural remedies *could* provide the relief sought not whether the state *will* provide the constitutional ruling which the plaintiff seeks.'" *Kaufman*, 466 F.3d at 87 (quoting *Spargo*, 351 F.3d at 79). Additionally, St. Paul may appeal family court decisions to New York's appellate courts. *See DeRouseau*, 2024 WL 4635310, at *3 (dismissing the complaint of a plaintiff who sued, among other defendants, the Westchester County Family Court and Judge Morales-Horowitz, because the "[p]laintiff's remedy, if any, was to pursue his appeal rights within the state court system").

In conclusion, the Court must abstain from considering Plaintiff's failure to train, supervise, and discipline claim, and his corresponding requests for injunctive and declaratory relief. To intervene would disrupt "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *O'Shea*, 414 U.S. at 500. Plaintiff does not request money damages in relation to his failure to train, supervise, and discipline claim, or against the UCS, the Westchester Family Court, CAJ Zayas, or Justice

11

Davidson.[2] *See* PSAC at 8 (requesting compensatory and punitive damages as to only Judge Egitto and Judge Morales-Horowitz). Therefore, Plaintiff's failure to train, supervise, and discipline claim—the only claim brought against the Westchester Family Court, the UCS, CAJ Zayas, and Justice Davidson—and all requests for injunctive and declaratory relief fail. *See* PSAC ¶¶ 51–54.

III. **All Claims for Money Damages against Judge Morales-Horowitz and Judge Egitto in Their Individual Capacities Are Barred by Judicial Immunity**

Plaintiff asserts two claims in the PSAC against Judges Morales-Horowitz and Egitto, in both their official and individual capacities. He alleges that both these Defendants deprived him of liberty and due process (Count II), and he claims that Judge Morales-Horowitz denied his right to an impartial tribunal and engaged in retaliation (Count III).

"Since the seventeenth century, the common law has immunized judges from damage claims arising out of their judicial acts." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). "It is well settled that 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" *Brady v. Ostrager*, 834 Fed. App'x 616, 618 (2d Cir. 2020) (quoting *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)). "The cloak of immunity is not pierced by allegations of bad faith or malice, even though unfairness and injustice to a litigant may result on occasion." *Tucker*, 118 F.3d at 932 (internal citations and quotation marks omitted). For example, in *Brady*, the Second Circuit affirmed that judicial immunity barred a civil action against a justice of the New York Supreme Court, even when the

---

[2] Indeed, Plaintiff could not successfully bring a claim for money damages against these Defendants, who are sued in their official capacities, because such claims would be barred by the Eleventh Amendment. *See supra* Section I.

plaintiff alleged that the judge "failed to adjudicate certain defenses, ignored evidence, . . . issued erroneous jury instructions," "conspired with various individuals, retaliated against [the plaintiff], and refused to intervene in his appeal." 834 Fed. App'x at 618.

Furthermore, "[t]he cases indicate that the *federal* common law on judicial immunities applies even to *state* officials when they are sued in federal court on federal claims." *Gross v. Rell*, 585 F.3d 72, 80 (2d Cir. 2009). Indeed, the Second Circuit has established that at least in Section 1983 cases, "local New York state judges of limited jurisdiction enjoy the same immunity accorded to judges of general jurisdiction." *Tucker*, 118 F.3d at 937 (collecting cases); *see also DeRouseau*, 2024 WL 4635310, at *2 (applying judicial immunity to Judge Morales-Horowitz and another Westchester County Family Court judge when the plaintiff failed to allege any facts showing that those judges acted beyond the scope of their judicial responsibilities or outside their jurisdiction).

There are only two limitations to absolute judicial immunity. *See Brady*, 834 F. App'x at 618. First, "[a] judge . . . will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356–57 (internal quotation marks omitted); *see also Tucker*, 118 F.3d at 937–38  (stating that "at least in a section 1983 case, a judge of a court of limited jurisdiction is entitled, like a judge of a court of general jurisdiction, to judicial immunity for all judicial acts not performed in the clear absence of all jurisdiction"). A judge will not be found in clear absence of all jurisdiction even if the judge lacked personal jurisdiction over a defendant, "unless the judicial conduct is so far outside the normal scope of judicial functions that the judge was in effect not acting as a judge." *Gross*, 585 F.3d at 85 (citing *Leseberg v. O'Grady*, 115 Conn. App. 18, 23 (2009)) (holding that immunity applied when a judge "had

13

subject matter jurisdiction over cases like [the party's], and though it was ultimately held that he did not have personal jurisdiction over [the party], [the judge] did not know it at the time").

Second, "a judge is immune only for actions performed in his judicial capacity." *Tucker*, 118 F.3d at 933. "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches[.]" *Bliven v. Hunt*, 579 F.3d 204, 209–10 (2d Cir. 2009) (internal quotation marks omitted). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. "In employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d at 210. "Actions that are judicial in nature include issuing a search warrant; directing court officers to bring a particular attorney before the judge for a judicial proceeding; granting a petition for sterilization; and disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case." *Id.* (internal citations omitted). "The principal hallmark of the judicial function is a decision in relation to a particular case." *Id.* at 211.

In contrast, a judge's "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988). Therefore, "although essential to the operation of the judicial system generally, [if] functions performed . . . [are] not integrally related to any specific judicial proceeding" and are instead administrative, judicial immunity does not apply. *Bliven*, 579 F.3d at 211 (discussing *Mitchell v. Fishbein*, 377 F.3d 157, 167–68 (2d Cir. 2004)).

14

Plaintiff alleges that "[t]his is not an appeal of a state family court determination" and rather "is a civil rights action challenging the systemic and unconstitutional failure" of the UCS and its policymakers. PSAC ¶ 1. However, the two claims against Judge Morales-Horowitz in Counts II and III clearly challenge her actions taken with regard to Plaintiff within the context of the family court proceedings against him. *See id.* ¶¶ 55–61. Plaintiff brings claims of deprivation of liberty and due process, denial of an impartial tribunal, and retaliation arising from Plaintiff's incarceration, Judge Morales-Horowitz's alleged refusal to recuse herself, and a November 3, 2025 dismissal of one of Plaintiff's petitions. *Id.* Clearly, judicial immunity bars these claims against Judge Morales-Horowitz. Judge Morales-Horowitz's decisions regarding Plaintiff's incarceration, recusal, and dismissal of Plaintiff's application were made within her judicial capacity and apply only to St. Paul's individual case before her. *See Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 713–14 (S.D.N.Y. 2011) (determining that judicial immunity protected judges from a suit alleging that the judges retaliated against plaintiff and that a judge refused to recuse himself).

Plaintiff's conclusory allegation that Judges Morales-Horowitz and Egitto caused his incarceration "while acting in the clear absence of all jurisdiction" is an improper, and incorrect, legal conclusion. PSAC ¶ 56. Even if the Westchester County Family Court lacked personal jurisdiction over St. Paul,[3] Judge Morales-Horowitz's decisions to incarcerate Plaintiff because he failed to pay child support, not recuse herself, and dismiss a claim or case, are clearly within her subject matter jurisdiction as a family court judge. *See Green v. Maraio*, 722 F.2d 1013, 1017

---

[3] The Court notes that there are no facts indicating that the Westchester County Family Court lacked or lacks personal jurisdiction over St. Paul, because St. Paul admits to "at all times relevant to this complaint, [residing in the] County of Westchester, State of New York." PSAC ¶ 8. However, the Court need not, and does not, make any such finding here.

15

(2d Cir. 1983) (holding that despite a lack of personal jurisdiction, "it is apparent that a judge who possesses subject matter jurisdiction is not within the 'clear absence of all jurisdiction' posture which would deprive him of the use of the defense of judicial immunity").

Similarly, to the extent Plaintiff brings his deprivation of liberty and due process claim against Judge Egitto in his individual capacity, any money damages are barred by judicial immunity. *Kellogg v. Nichols*, 703 F. Supp. 3d 367, 372 (N.D.N.Y. 2023), *aff'd*, 149 F.4th 155 (2d Cir. 2025), and *aff'd*, 170 F.4th 20 (2d Cir. 2026) ("The doctrine of judicial immunity shields judges from suit to the extent they are sued in their individual capacities."). Plaintiff makes no factual allegations involving Judge Egitto, other than identifying him as "the Supervising Judge of the Family Courts, Ninth Judicial District, responsible for oversight of Family Court operations and administration in Westchester County." PSAC ¶ 10. Nevertheless, Plaintiff still brings his deprivation of liberty and due process claim against Judge Egitto, along with Judge Morales-Horowitz, and requests compensatory and punitive damages from Judge Egitto. *See id.* ¶¶ 10, 55–57; PSAC at 8.

Despite Judge Egitto's supervisory rule and presumably administrative tasks, Plaintiff's deprivation of liberty and due process claim is predicated only on Plaintiff's individual incarceration, which involves functions that are judicial in nature. Accordingly, judicial immunity bars this claim brought against Judge Egitto in his individual capacity. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). Therefore, judicial immunity bars all claims (Counts II and III) for money damages against Judge Morales-Horowitz and Judge Egitto in their individual capacities.

All of Plaintiff's claims brought in the PSAC are futile. Accordingly, the Court denies Plaintiff's motion to amend.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Amend.

It appears that this Opinion and Order will also doom Plaintiff's FAC for the reasons stated herein. However, in order to ensure that Plaintiff has an opportunity to be heard, Plaintiff may file an opposition to Defendants' Motion to Dismiss by June 5, 2026, and Defendants may file a reply by June 12, 2026. **Plaintiff shall not use his opposition to reargue what the Court has already decided herein, and the arguments must be limited to what is asserted in Plaintiff's First Amended Complaint**.

The Clerk of Court is directed to terminate ECF No. 29.

Dated:  May 15, 2026
        White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

17